UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK HARRISON,

       Plaintiff,

v.
                                      Case No. 1:13-cv-58
                                      Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
                                    /

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on January 23, 1955(AR 105).[1] He alleged a disability onset date of March 23, 2009 and was insured for benefits through December 31, 2013 (AR 105). Plaintiff graduated from high school and had previous employment as a marine fabricator and sign estimator (AR 110). Plaintiff identified his disabling conditions as advanced osteoarthritis in both left and right knees and arthritis in the wrist (AR 109). The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on March 16, 2011 (AR 10-18). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of March 23, 2009 and that he meets the insured status requirements of the Social Security Act through December 31,

2013 (AR 12). Second, the ALJ found that plaintiff had severe impairments of bilateral arthritis in his knees and wrists, status-post total knee arthroplasty (TKA) of his right knee and status-post bilateral midcarpal fusion (AR 12). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 12). Specifically, plaintiff did not meet the requirements of Listings 14.09 (inflammatory arthritis) (AR 12-13).

The ALJ decided at the fourth step that plaintiff has the residual functional capacity (RFC) to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b):

> The claimant is limited to no more than occasional pushing/pulling with his upper extremities. The claimant cannot perform work tasks requiring repetitive use of his wrists. The claimant has occasional postural limitations but must never climb, kneel, or use ladders. The claimant requires a sit/stand option that he may exercise at will. The claimant is limited to no more than frequent fingering and/or occasional handling. The claimant must avoid concentrated exposure to vibrations and hazards, such as moving machinery and unprotected heights.

(AR 13). The ALJ also found that plaintiff was unable to perform any past relevant work (AR 16)

At the fifth step, the ALJ determined that plaintiff could perform a range of light work in the national and local (Michigan) economies (AR 16-17). The work included: surveillance system monitor (400 local jobs and 16,000 national jobs); and information clerk (1,000 local jobs and 42,000 national jobs) (AR 17). Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, from March 23, 2009 (the alleged onset date) through March 16, 2011 (the date of the decision) (AR 18).

### III. ANALYSIS

Plaintiff raised one general issue on appeal:

**Whether the decision of the ALJ that plaintiff is not entitled to receive Social Security Disability is supported by substantial evidence.**

Plaintiff raised five arguments in support of this generalized claim of error.

**A.   The ALJ committed legal error in the evaluation of the claim**

Plaintiff contends that the ALJ applied an incorrect grid in determining whether plaintiff could perform other work in the national economy. The medical-vocational guidelines or grids "take account only of a claimant's 'exertional' impairment, that is 'an impairment which manifests itself by limitations in meeting the strength requirements of jobs[.]' 20 C.F.R., Part 404, Subpt. P, App. 2 § 200.00(e)." *Abbott*, 905 F.2d at 926. An ALJ may use the grids, rather than expert testimony, to show that a significant number of jobs exist in the economy when the claimant's characteristics fit the criteria of the guidelines. *Siterlet v. Secretary of Health and Human Servs.*, 823 F.2d 918, 922 (6th Cir. 1987). *See Bohr v. Bowen*, 849 F.2d 219, 221 (6th Cir. 1988) ("the grids are a shortcut that eliminate the need for calling in vocational experts").

The grids only apply to a claimant when all factors (i.e., age, work experience, physical ability and education) meet the requirements as set forth in the grids. "In general, where the characteristics of the claimant exactly match the characteristics in one of the rules, the grid determines whether significant numbers of other jobs exist for the person or whether that person is disabled." *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003). As the Sixth Circuit explained:

> The grid comes into play only when the claimant's characteristics precisely coincide with the grid. In any other situation the grid is used at most for guidance in the disability determination. When the claimant does indeed match one of the grid's patterns, then all the grid does is announce that substantial gainful work in the national economy is available for that particular individual; in other words, once a finding is made that the individual can do light work, for example, the grid operates to declare that light work is available.

5

*Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 535 (6th Cir. 1981). "It is well established that if a claimant's condition constitutes a nonexertional impairment, an ALJ may not rely on the grid in determining whether there are jobs in the national economy which the claimant can perform." *Mullins v. Secretary of Health and Human Services*, 836 F.2d 980, 985 (6th Cir. 1987). "However, before reaching the conclusion that the grid will not be applied because of the alleged nonexertional limitations, those limitations must be severe enough to restrict a full range of gainful employment at the designated level." *Id.* (internal quotations marks and brackets omitted).

Here, the ALJ found that plaintiff was unable to perform any of his past relevant work (AR 15). In applying the grids, the ALJ noted that plaintiff was born on January 23, 1955 and as of the alleged onset date (March 23, 2009) was 54 years old and defined as a person "closely approaching advanced age" (AR 16). The ALJ incorrectly applied Rule 202.14, the rule applicable to a person who is "closely approaching advanced age" (50-54), who can perform light exertional work, is a high school graduate, and has previous work experience that is skilled or semiskilled (with skills not transferable), to conclude that plaintiff was "not disabled" at step five of the sequential evaluation (AR 16-17). The relevant time for determining a claimant's age in applying the regulations is not the alleged onset date, but rather the date of the ALJ's decision. *Varley v. Secretary of Health & Human Services*, 820 F.2d 777, 780 (6th Cir. 1987) ("the claimant's age as of the time of the decision governs in applying the regulations"). Plaintiff points was 56 years old and a person of "advanced age" (i.e., 55 and over) when the ALJ entered the decision on March 16, 2011. *See* 20 C.F.R., Part 404, Subpt. P, App. 2 § 201.00(g); 20 C.F.R., Part 404, Subpt. P, App. 2, Table 2. Plaintiff further contends that the ALJ should have used Rule 202.04, which applies to a person of advanced age with a maximum sustained work capability limited to light work, an education of

6

"High school graduate or more -- does not provide for direct entry into skilled work," and previous experience of unskilled work. [2] *See* 20 C.F.R., Part 404, Subpt. P, App. 2 § 201.00(f); 20 C.F.R., Part 404, Subpt. P, App. 2, Table 2.  Under Rule 202.04, plaintiff would have been  found disabled.

Because plaintiff was 56 years old on the date the ALJ entered his decision, the ALJ should have applied a grid rule applicable to a person of "advanced age" rather than a rule applicable to a person "closely approaching advanced age."  If the ALJ had properly characterized plaintiff as being of advanced age, then he could have applied grid Rules 202.06 or 202.08,  both which are applicable to a high school graduate with the same previous work experience as Rule 202.14 (i.e., Skilled or semiskilled - skills not transferable).  Under Rule 202.06, which requires education of "High school graduate or more -- does not provide for direct entry into skilled work," plaintiff would be found "disabled."  Under Rule 202.08, which requires education of "High school graduate or more -- provides for direct entry into skilled work," plaintiff would be found as "not disabled".  Finally, if the ALJ had applied Rule 202.04 as urged by plaintiff, then plaintiff would also have been found disabled.

Defendant does not address this argument in any substance, simply stating that there was no error because the ALJ relied on the testimony of the vocational expert (VE), who testified that there were a significant number of jobs that existed in the national economy that plaintiff could perform.  Defendant's Brief at p. 10.  Defendant's position is without merit.  Although plaintiff's RFC included both exertional and nonexertional limitations, he could have been found disabled under the grids.  As the court explained in *Lounsbury v. Barnhart*, 468 F.3d 1111 (9th Cir. 2006):

---

[2] Plaintiff incorrectly states in his brief that Rule 202.04 applies "to a person closely approaching advanced age (age 55 to 59)."  Plaintiff's Brief at p. 13.

> "[W]here application of the grids directs a finding of disability, that finding must be accepted by the Secretary . . . whether the impairment is exertional or results from a combination of exertional and non-exertional limitations." *Cooper v. Sullivan*, 880 F.2d 1152, 1157 (9th Cir.1989) (emphasis added). Because the grids are not designed to establish automatically the existence of jobs for persons with both severe exertional and non-exertional impairments, they may not be used to direct a conclusion of nondisability. *See Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir.1999). *In other words, where a person with exertional and non-exertional limitations is "disabled" under the grids, there is no need to examine the effect of the non-exertional limitations*. But if the same person is not disabled under the grids, the non-exertional limitations must be examined separately.

*Lounsburry*, 468 F.3d at 1115-16 (footnote omitted and emphasis added).

When the requirements of a particular grid rule are met, the rule is conclusive rather than presumptive, and cannot be rebutted by expert vocational testimony. SSR 83-5a ("Disability -- Medical-Vocational Guidelines -- Conclusiveness of Rules").[3] *See*, *e.g.*, *Powell v. Secretary of Health and Human Services*, No. 1:12-cv-00265, 2013 WL 4590351 at *5 (N.D. Miss. Aug. 28, 2013) ("[i]t is true that if a determination of 'disabled' is directed by application of the grids, that determination is conclusive"); *Ediger v. Astrue*, No. 11-1042-SAC, 2012 WL 10352 at *4 (D. Kan. Jan. 3, 2012) ("There is no provision in either the Social Security Act or the regulations for an ALJ to rebut the conclusion directed in the regulations contained in Appendix 2. Specifically, the ALJ cannot rebut the conclusion in the grids by the use of vocational expert testimony. SSR 83–5a, 1983 WL 31250"); *Baylis v. Astrue*, No. 09-2217, 2011 WL 3417193 at *4 (E.D. Pa. Aug. 3, 2011) ("Following the GRID is mandatory: once the ALJ has determined each of the four factors for a

---

[3] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 498 (6th Cir. 2006), quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 549 (6th Cir.2004) (citations omitted).

claimant, the GRID 'direct[s] a conclusion concerning a claimant's disability.' *Podedworny v. Harris*, 745 F.2d 210, 216 (3d Cir.1984) (citing 20 C.F.R. § 404, Subpart P, Appendix 2, § 200.00(a)) (emphasis in original)").

Based on this record, the ALJ should have classified plaintiff as a person of advanced age for purposes of the grids. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate plaintiff in light of the correct grid.

> **B. The ALJ erred as a matter of law in describing jobs as light when said jobs were classified as sedentary by the VE**

The ALJ's RFC determination, which found that plaintiff could perform a range of light work, appears in the second hypothetical question posed to the VE (AR 42-43). In response to that question, which assumed a hypothetical person with plaintiff's RFC, the VE testified that there would be no jobs available to such a person in the light exertional level (AR 43). However, the VE identified jobs available in the sedentary exertional level, such as surveillance system monitor (400 local jobs and 16,000 national jobs) and information clerk (1,000 local jobs and 42,000 national jobs) (AR 17, 43-44). Plaintiff contends that the ALJ erred when his decision described the jobs identified by the VE as "light" rather than "sedentary." Plaintiff's contention is without merit. Under the regulations, a person able to perform light work can generally perform sedentary work. *See* 20 C.F.R. § 404.1567(b) ("If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time"). Here, the ALJ found that plaintiff had some "additional limiting factors," e.g., plaintiff "requires a sit/stand option that he may exercise at will" and "is

9

limited to no more than frequent fingering and/or occasional handling" (AR 13). Nevertheless, the VE did not consider these factors as excluding the identified sedentary jobs (AR 43-44). Accordingly, plaintiff's claim of error will be denied.

**C.    The ALJ erred in not finding plaintiff's left knee surgery as a severe impairment**

Plaintiff contends that the ALJ erred by failing to find his left knee surgery to be a severe impairment. Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Id.* An ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity. *Id.* Here, the ALJ found that plaintiff suffered from a number of severe impairments (bilateral arthritis in his knees and wrists, status-post TKA of his right knee and status-post bilateral midcarpal fusion) (AR 12), and proceeded through the remaining steps of the sequential evaluation considering plaintiff's medical record. Accordingly, plaintiff's claim of error will be denied.

**D.    The ALJ made an improper credibility determination**

Plaintiff contends that the credibility determination is flawed because the ALJ found that plaintiff was not credible but failed to explain his reasons in support of this finding. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders,

to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

Here, the ALJ found that plaintiff's hearing testimony and the objective medical evidence of record confirmed the diagnosis of his alleged impairments (AR 14). However, the ALJ determined that plaintiff's subjective complaints of functional limitations he experienced on account of these impairments were "not consistent with the objective findings or his reported activities of daily living" (AR 14). For example, plaintiff testified: that despite multiple procedures and physical therapy, his knees and wrists are worse then they have ever been; that he has difficulty opening jars and driving; that since 2009 he has needed an assistive device to walk (currently a cane); that he can sit for an hour but must stretch because of his discomfort; he can stand for 30 minutes before he feels a burning pain in his leg; he can walk a block before he has to sit and rest his left knee; he can no longer walk his dog or do lawn work (except using a riding lawn mower); and he does not take out

the trash (AR 14). Plaintiff stated in a function report that his daily activities included getting coffee, watching the news, showering, using the computer to look for work, taking care of his duties as treasurer of his local Lions Club and preparing lunch (AR 132). At the hearing, plaintiff testified that he could lift up to 20 pounds and that his daily activities included doing dishes, feeding his dog, helping with the laundry and vacuuming, use a riding lawn mower, and occasionally helps with grocery shopping and cooking (AR 14, 35-38).

The ALJ found plaintiff's claims of alleged disabling impairments as inconsistent with the medical record. With respect to the bilateral arthritis, the ALJ found that plaintiff's current condition and reported activities of daily living "point to a remarkably improved post-surgery condition" (AR 15). The ALJ explained that plaintiff underwent right midcarpal fusion surgery in May 2010, and by November 2010 reported that he was happy with the result, that the wrist was great, complained of no pain or problems with activities, and was reportedly content with his range of motion (AR 15). In December 2010, plaintiff underwent left midcarpal fusion surgery, and was in recovery at the time of the administrative hearing (AR 15). However, at that time, plaintiff's condition was only expected to improve, and his subjective complaints regarding the left wrist were analyzed through this context (AR 15). Plaintiff underwent right knee surgery in August 2009 (AR 15). In a follow-up in November 2009, his physician, Robert L. Barry, M.D., reported that plaintiff was "doing quite well," had "wonderful range of motion and stability," and the doctor's prognosis for the knee condition was that surgical action should help his pain, but the rest of the healing would come in time (AR 15).

After reviewing the record, the ALJ concluded that "[d]espite his difficulties, the claimant's testimony indicates that he retains an adequate level of functioning to perform within the

parameters of the above RFC, which has been calibrated to account for his current level of diminished capacity" (AR 16). The ALJ discounted plaintiff's credibility after finding contradictions among the medical records, claimant's testimony, and other evidence. *See Walters*, 127 F.3d at 531. There is no compelling reason to disturb the ALJ's finding. *See Smith*, 307 F.3d at 379.

> **E. The ALJ erred in providing no explanation for rejecting the assessment of plaintiff's treating physician**

Plaintiff contends that the ALJ dismissed the opinions of two treating physicians, Robert Barry, M.D. and Brian J. McComb, D.O., because of plaintiff's "subsequent surgeries and positive prognosis" (AR 15). A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters*, 127 F.3d at 529-30. "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

13

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(c)(2) and § 416.927(c)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Services*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip*, 25 F.3d 284 at 287.

Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Dr. Barry completed a two-page "Medical Questionnaire" on March 8, 2010 (AR 15, 299-300). In this questionnaire Dr. Barry stated: that he had treated plaintiff since July 2003; that plaintiff had knee replacement surgery and arthritis in the knees; that plaintiff had bilateral wrist arthritis and needed wrist surgery; and that plaintiff had functional limitations consisting of decreased strength and range of motion in his wrists (AR 299-300). Dr. Barry did not respond to a question asking "[w]hat treatment is prescribed for the patient" (AR 300). Finally, when asked

if plaintiff was capable of sustaining a full-time job, Dr. Barry did not answer the question directly, but stated "no heavy labor secondary to upper and lower extremity arthritis" (AR 300).

Dr. Barry also submitted a "Medical Assessment of Ability to Do Work Related Activities (Physical)" dated March 12, 2010 (AR 302-04). In this assessment, Dr. Barry found that plaintiff could lift up to 10 pounds, would require two unscheduled breaks a day, could sit up to six hours in an 8-hour workday, could not grasp, turn or twist objects with his hands, could not engage in fine manipulation with his fingers, and could not reach with his arms (AR 302-03). In addition, plaintiff could only occasionally stoop, crouch/squat, climb ladders and climb stairs (AR 304). The doctor also found that plaintiff would, on average, miss more than four days per month due to his impairments or treatment (AR 303).

Dr. McComb also filled out a two-page "Medical Questionnaire" on February 25, 2010 (AR 16, 296-97). In this opinion, Dr, McComb stated: that he had treated plaintiff for five years; that plaintiff had severe osteoarthritis primarily in the knees which was confirmed by x-rays; and that plaintiff's symptoms were predominantly pain and lack of range of motion (AR 296). In addition, plaintiff had functional limitations as follows: cannot bend/straighten legs easily; difficulty climbing ladders, stooping, etc.; and cannot stand or walk for long periods (AR 296). Plaintiff has been treated with anti-inflammatory medications, injections and surgery, with anticipated knee replacement surgery (AR 297). Finally, when asked if plaintiff was capable of sustaining a full-time job, Dr. McComb stated "no" and that "he will be severely limited by pain" (AR 297).

The ALJ gave little weight to the opinions expressed by Dr. Barry and Dr. McComb (AR 15-16). The ALJ stated that although Dr. Barry had treated plaintiff since 2003, the doctor's "assessment of the claimant's pain in his upper and lower extremities and resultant functional

15

limitation is given limited consideration because of plaintiffs subsequent surgeries and positive prognosis" (AR 15). The ALJ gave some weight to Dr. Barry's March 12, 2010 medical assessment as a pre-surgery opinion (AR 15). However, the ALJ did not adopt portions of that assessment nor portions of Dr. McComb's February 25, 2010 opinion:

> Nevertheless, the undersigned rejects Dr. Barry's assessment that the claimant would be absent from work for more than four days each month because of the success of the claimant's knee and wrist surgeries. [Exh. 14F] Furthermore, the undersigned finds Dr. Barry's determination that the claimant should be limited to sedentary work inappropriate because the claimant retains the ability to walk and/or stand up for up to 6 hours and exhibits no sitting impairment. Further, Dr. Barry does not include any pushing or pulling limitations. Moreover, Dr. Barry's assessment that the claimant cannot perform even one hour of reaching, handling and/or fingering per workday is not appropriate now given the claimant's objectively documented post-surgery condition *(Id.)*. The undersigned has given similarly limited consideration to the opinion of Brian J. McComb, D.O. (Exhibit 12 F). In February 2010, Dr. McComb found the claimant more limited than what the most current objective medical evidence indicates. *(Id.)*. The undersigned has taken the claimant's current knee condition and his testimony into consideration and adjusted the above articulated RFC to accommodate the claimant's confirmed functional limitations.

(AR 15-16).

The ALJ did not give good reasons for discounting the opinions of Dr. Barry (who had treated plaintiff since 2003) and Dr. McComb (who had treated plaintiff since 2005). When the ALJ entered his decision in March 2011, these two doctors had treated plaintiff for a combined total of approximately 14 years. The ALJ's evaluation of these doctors appears based largely on plaintiff's anticipated post-surgery condition rather than plaintiff's current condition as set forth in the doctors' opinions. Accordingly, on remand, the ALJ should re-evaluate the opinions of Drs. Barry and McComb, and any subsequent medical developments which occurred between the ALJ's decision (March 16, 2011) and plaintiff's date last insured (December 31, 2013).

16

## IV.  CONCLUSION

For the reasons discussed, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner should re-evaluate plaintiff's ability to perform other work in light of the correct grid at step five of the sequential evaluation.  In addition, the ALJ should re-evaluate the opinions of Drs. Barry and McComb through plaintiff's date last insured.   A judgment consistent with this opinion will be issued forthwith.

Dated:  March 25, 2014 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge